FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 15, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELANIE A.,<br><br>               Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>               Defendant. | NO:  1:20-CV-03023-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 14 and 17.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney D. James Tree. The Defendant is represented by Special Assistant United States Attorney Benjamin J. Groebner.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 17, and **DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 14.

ORDER ~ 1

## JURISDICTION

Plaintiff Melanie A.[1] filed for supplemental security income and disability insurance benefits on December 22, 2016, alleging an onset date of July 3, 2014. Tr. 193-208.  Benefits were denied initially, Tr. 119-22, and upon reconsideration, Tr. 123-28.  A hearing before an administrative law judge ("ALJ") was conducted on October 16, 2018.  Tr. 42-63.  Plaintiff was represented by counsel and testified at the hearing.  *Id*.  The ALJ denied benefits, Tr. 24-41, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 40 years old at the time of the first hearing.  *See* Tr. 219.  She completed twelfth grade.  Tr. 223.  She lived by herself at the time of the hearing, after living with her parents for several years.  Tr. 51.  Plaintiff has work history as a secretary.  Tr. 58.  She testified she can no longer work because of lower back pain, thoracic spine pain, neck pain, and depression.  Tr. 47-48.  Plaintiff testified

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial.

ORDER ~ 2

1  that it is "difficult" for her to sit for longer than 20 minutes, she needed frequent

2  breaks to get up and move around when she worked at her clerical job.  She

3  reported that when she was experiencing severe depression she did not leave her

4  room, "stopped caring about anything," and would schedule medical appointments

5  and then "habitually reschedule them and not go."  Tr. 47-49.  Plaintiff also

6  testified that after refusing mental health treatment for many years, she started

7  therapy a year before the hearing date, and her mental health medications are

8  "helping."  Tr. 50, 56-58.

9                          **STANDARD OF REVIEW**

10        A district court's review of a final decision of the Commissioner of Social

11  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

12  limited; the Commissioner's decision will be disturbed "only if it is not supported

13  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

14  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

15  reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

16  (quotation and citation omitted).  Stated differently, substantial evidence equates to

17  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

18  citation omitted).  In determining whether the standard has been satisfied, a

19  reviewing court must consider the entire record as a whole rather than searching

20  for supporting evidence in isolation.  *Id.*

21

ORDER ~ 3

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER ~ 4

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more

ORDER ~ 5

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

ORDER ~ 6

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five,

the burden shifts to the Commissioner to establish that (1) the claimant is capable

of performing other work; and (2) such work "exists in significant numbers in the

national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial

gainful activity since July 3, 2014, the alleged onset date.  Tr. 30.  At step two, the

ALJ found that Plaintiff has the following severe impairments: degenerative disc

disease; depression; and anxiety.  Tr. 30.  At step three, the ALJ found that

Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of a listed impairment.  Tr. 30.  The ALJ then found

that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> with the following limitations. The claimant can lift/carry 10 pounds
> frequently and 20 pounds occasionally.  She can stand/walk about six hours
> and sit about six hours during an eight-hour day.  The claimant can

ORDER ~ 7

occasionally balance, kneel, crouch, crawl, and climb.  She can frequently stoop.  The claimant can perform jobs with an SVP level no greater than 4. She can perform tasks without public contact and with only incidental interaction with coworkers.  The claimant is likely to be off-task at least 10%, but less than 15%, of the workday.

Tr. 32.  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  Tr. 35.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: file clerk, data entry clerk, and office helper.  Tr. 36.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 3, 2014, through the date of the decision.  Tr. 37.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly considered Plaintiff's symptom claims;

2.  Whether the ALJ properly considered the medical opinion evidence; and

3.  Whether the ALJ properly considered the lay witness evidence.

## DISCUSSION

**A. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms; however,

Plaintiff's "statements concerning the intensity, persistence, and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other

evidence in the record" for several reasons.  Tr. 32.

### 1. *Failure to Seek and Comply with Treatment*

First, the ALJ noted that Plaintiff "has alleged significant mental health

impairment symptoms, including that she spent most of her time in her room and in

her bed due to depression.  However, this is inconsistent with [Plaintiff's] minimal

mental health treatment of record.  It is not reasonable to assume that an individual

experiencing the significant mental impairment symptoms that [Plaintiff] has

alleged would not have sought available, accessible treatment through health

insurance more regularly."  Tr. 32-33.  Unexplained, or inadequately explained,

failure to seek or comply with treatment may be the basis for rejecting Plaintiff's

symptom claims unless there is a showing of a good reason for the failure.  *Orn v.

Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  Here, the ALJ acknowledges Plaintiff's

complaints of  "poor and disorganized sleep" at several treatment visits; inability to

get out of bed in September 2016; "significant mental impairment symptoms" in

April 2017; and 2018 reports of some improvement but continued mental health

ORDER ~ 10

symptoms.  Tr. 33 (citing Tr. 288, 291, 323, 423, 650, 727, 733, 741).  However, as noted by the ALJ, despite referrals from treating providers, Plaintiff did not start mental health treatment until around six months after her first reports of mental health symptoms, in April 2017.  *See* Tr. 423.  Moreover, Plaintiff "only attended about four more visits that year in May, June, July, and November 2017.  [And Plaintiff] did not return to mental health treatment until almost 1 year later in August 2018."  Tr. 33 (citing Tr. 427, 431, 435, 681, 727).

Plaintiff argues that her "treatment history is not a valid reason for rejecting [Plaintiff's] claims" because "it was her severe depressive disorder that was the cause of her not engaging in more frequent mental health treatment."  ECF No. 14 at 8-9.  Pursuant to Social Security Ruling 16-3p, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029.  In particular, where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility.  *See Nguyen*, 100 F.3d at 1465.  In support of her argument, Plaintiff cites her own statements that she "dealt with" her depression by isolating in her bedroom; observations by physical treatment providers at times that Plaintiff

ORDER ~ 11

appeared depressed and anxious; and diagnoses from Plaintiff's sporadic mental health treatment that included panic disorder, major depressive disorder, social anxiety disorder, and bipolar disorder.  ECF No. 14 at 9 (citing Tr. 291, 294-98, 300-28, 425-26, 429, 431, 441-67, 727).  However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14.

Here, the ALJ specifically considered Plaintiff's testimony that she "habitually rescheduled or missed appointments due to mental impairment symptoms.  However, there are records of [Plaintiff] seeking medical treatment for acute illnesses, such as upper respiratory infections.  This further supports the [] inconsistency between [Plaintiff's] alleged symptoms and her minimal engagement in mental health treatment."  Tr. 34.  Moreover, Plaintiff fails to cite, nor does the Court discern, objective evidence from a treating source that Plaintiff missed previously scheduled appointments due to alleged mental health symptoms, or that her failure to seek mental health treatment was specifically attributable to her depression.  Instead, Plaintiff acknowledged at the hearing that her family "tried to get [her] to go [to counseling] for a long time and [she] wouldn't do it."  Tr. 50.  Thus, regardless of evidence in the record that could be considered favorable to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's failure to seek

mental health treatment was inconsistent with the alleged severity of her

complaints. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more

than one interpretation, the ALJ's conclusion must be upheld). This was a clear

and convincing reason for the ALJ to discredit Plaintiff's symptom claims.

### 2. Lack of Objective Medical Evidence

Second, the ALJ found that Plaintiff's claims of physical impairment were

not supported by the objective evidence and overall treatment record. Tr. 33-34.

An ALJ may not discredit a claimant's pain testimony and deny benefits solely

because the degree of pain alleged is not supported by objective medical evidence.

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947

F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical

evidence is a relevant factor in determining the severity of a claimant's pain and its

disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Here, the

ALJ acknowledged Plaintiff's claims of "significant pain and functional

limitations" during the relevant adjudicatory period; however, the ALJ also set out

the medical evidence contradicting Plaintiff's claims of disabling limitations. For

example, the ALJ noted unremarkable x-rays of Plaintiff's lumbar spine in April

2017, mild MRI imaging of the lumbar spine with no neurological involvement,

improved range of motion with trigger point injection, and "few" records

documenting instances of worsening pain as opposed to improvement. Tr. 33-34

(citing Tr. 354, 387, 444, 446, 638, 692). In addition, the ALJ cited treatment

ORDER ~ 13

notes from two of Plaintiff's treatment providers who reviewed the objective

evidence and found, respectively, that Plaintiff was not a surgical candidate

because she "had no neurological symptoms to warrant surgery," and her condition

was not severe enough for surgical intervention.  Tr. 34 (citing Tr. 692-93, 752).

Plaintiff generally argues that her testimony is "supported by many other

objective findings throughout the record," including notes of wide-based and/or

antalgic gait, tenderness to palpation, positive straight leg test, reduced motor

strength, and pain with extension.  ECF No. 14 at 3-4, 12 (citing Tr. 300-37 (noting

mild pain), 343-80, 688 (noting that thoracic pain was "surprising"), 692 (noting

normal mood, affect, and behavior), 697, 701-02, 706 (noting normal mood, affect,

and behavior)).  Plaintiff additionally argues that the ALJ's improperly relied on

recommendations from treating providers regarding her surgical status, because

she is "claiming disability stemming from chronic pain and severe mental

impairments, not other neurological symptoms.  The fact that surgery is not a

viable option right now for [Plaintiff] is not a comment on her pain or level of

dysfunction, but simply a recognition about the appropriate medical treatment for

[Plaintiff's] specific impairments."  ECF No. 14 at 12.  However, evidence of

"conservative treatment" is sufficient to discount a claimant's testimony regarding

the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Moreover, regardless of evidence that could be considered favorable to Plaintiff, it

was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was

inconsistent with objective findings from the longitudinal record.  Tr. 33-34.

"[W]here evidence is susceptible to more than one rational interpretation, it is the

[Commissioner's] conclusion that must be upheld."  *Burch*, 400 F.3d at 679.

Finally, even assuming, *arguendo*, that the ALJ erred in making this finding, any

error is harmless because, as discussed herein, the ALJ's ultimate rejection of

Plaintiff's symptom claims was supported by substantial evidence.  *See Carmickle*

*v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### 3.  Improvement

Third, and finally, the ALJ found Plaintiff's allegations were inconsistent

with ongoing treatment records noting improvement in her physical and mental

symptoms claims with treatment, including medication.  Tr. 33-34.  A favorable

response to treatment can undermine a claimant's complaints of debilitating pain or

other severe limitations.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir.

2008); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.

2006) (Conditions effectively controlled with medication are not disabling for

purposes of determining eligibility for benefits).  First, as to her alleged physical

impairments, the ALJ cites evidence that "with pain medication, [Plaintiff] has also

reported multiple times throughout the adjudicatory period that her medication

regiment was adequate and relieved up to 90% of her pain with no side effects, no

new symptoms, and low average pain levels (such as 3 out of 10)."  Tr. 33 (citing

Tr. 299, 302, 305, 309, 330, 333, 336, 339, 342, 345, 348, 351, 354, 357, 360, 363,

ORDER ~ 15

366, 369, 379, 382 (reporting she was back to work full time and tolerating it "fairly well"), 439, 441, 444, 446, 452, 455, 458, 460).  In addition, the ALJ cited Plaintiff's reported improvement in overall function, and ability to perform daily activities; her demonstrable improvement in range of motion after trigger point injections; her reported improvement in functioning after an RFA in June 2017; and improvement with adjustments in medication.  Tr. 33-34, 302, 305, 309, 387, 443.  Second, as to her claimed mental impairments, the ALJ noted that in August and September 2018 Plaintiff reported improvement in her depression "but that symptoms continued nonetheless"; and in October 2018 she demonstrated a less anxious and depressed mood, and reported that she was sleeping better with medication.  Tr. 33-34 (citing Tr. 727, 733, 735, 741, 743).

As an initial matter, Plaintiff argues that some improvement with treatment, which "allowed her to keep up with her greatly reduced activities," is not a clear and convincing reason "to conclude that she is capable of working."  ECF No. 14 at 10 (similarly noting that improvement with pain medication "is not a clear and convincing reason for finding [Plaintiff] is not disabled.").  However, as noted by Defendant, the ALJ "did not consider whether the effectiveness of treatment showed that [Plaintiff] could work full time.  The ALJ considered the effectiveness of treatment in weighing [Plaintiff's] statements about the severity of her symptoms." ECF No. 17 at 6; *see Warre*, 439 F.3d at 1006 (conditions effectively controlled with medication are not disabling for purposes of determining eligibility

ORDER ~ 16

for benefits).  Plaintiff additionally argues, without citation to the record, that the

"ALJ fails to explain how moderately effective treatments, for a short period of

time, while a patient is on strong prescription medications, are a clear and

convincing reason to reject [Plaintiff's] testimony of chronic pain that requires

frequent changes of positions and rest."  ECF No. 14 at 11.  However, as noted

above, the ALJ relied on Plaintiff's consistent reports during the adjudicatory

period that her medication regiment relieved up to 90% of pain with no side

effects, her average pain levels were reported as low as a 3 out of 10 after

treatment, and her mental health symptoms improved with medication.  Tr. 33-34.

Based on the foregoing, the Court finds it was reasonable for the ALJ to conclude

that consistent evidence of improvement in Plaintiff's claimed physical and mental

impairments was inconsistent with her allegations of incapacitating physical and

mental limitations.  *See Burch*, 400 F.3d at 679 (where evidence is susceptible to

more than one interpretation, the ALJ's conclusion must be upheld).  This was a

clear and convincing reason to discredit Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons,

supported by substantial evidence, for rejecting Plaintiff's symptom claims.

## B. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

ORDER ~ 17

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's. *Id.* If a treating or examining physician's opinion is

uncontradicted, the ALJ may reject it only by offering "clear and convincing

reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d

1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's

opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

providing specific and legitimate reasons that are supported by substantial

evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

"However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

Plaintiff argues the ALJ erroneously considered the opinion of examining

psychologist N.K. Marks, Ph.D., and reviewing physician Melanie Mitchell,

Psy.D. ECF No. 14 at 13-15. Dr. Marks completed an evaluation of Plaintiff in

November 2016, and opined that Plaintiff had marked limitations in her ability to

understand, remember, and persist in tasks by following detailed instructions;

perform activities within a schedule, maintain regular attendance, and be punctual

within customary tolerances without special supervision; learn new tasks; perform

1   routine tasks without special supervision; adapt to changes in a routine work

2   setting; make simple work-related decisions; be aware of normal hazards and take

3   appropriate precautions; ask simple questions or request assistance; communicate

4   perform effectively in a work setting; maintain appropriate behavior in a work

5   setting; complete a normal work day and work week without interruptions from

6   psychologically based symptoms; and set realistic goals and plan independently.

7   Tr. 294-98.  Dr. Marks also opined that the overall severity of Plaintiff's diagnosed

8   mental impairments was marked; and she would be impaired for 24 months, with

9   medical treatment.  Tr. 296.  In November 2016, Dr. Melanie Mitchell reviewed

10  Dr. Marks' medical report and found the diagnoses were supported by available

11  objective evidence, and the "severity and functional limitations" were supported by

12  available medical evidence.  Tr. 680.

13      The ALJ gave these opinions little weight for several reasons.  Tr. 34.

14  Specifically, the ALJ found that the opinions are "inconsistent with [Plaintiff's]

15  contemporary treatment record, which as discussed [herein] does not document

16  significant mental health treatment.  Moreover, these opinions are based on factors

17  other than [Plaintiff's] impairments that we do not evaluate under our Rules, such

18  as homelessness."  Tr. 34.  Relevant factors to evaluating any medical opinion

19  include the amount of relevant evidence that supports the opinion, the quality of

20  the explanation provided in the opinion, and the consistency of the medical opinion

21  with the record as a whole.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir.

2007); *Orn*, 495 F.3d at 631 (the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion).

First, Plaintiff challenges the ALJ's consideration of her lack of mental health treatment as a reason to find Dr. Marks' opinion was inconsistent with the overall treatment record. However, as discussed in detail above, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, as here, it is reasonable for the ALJ to consider the level or frequency of treatment within the overall record. *Molina*, 674 F.3d at 1113-14. Second, Plaintiff contends that Dr. Marks' opinion is supported by her own psychological evaluation of Plaintiff, which included findings of minimal eye contact, very depressed and tearful mood, struggle to maintain focus, score within the severe range of depression on the Beck Depression Inventory, and score within the moderate level of anxiety on the Beck Anxiety Inventory. ECF No. 14 at 14 (citing Tr. 295-98). However, the Court's review of the mental status examination completed by Dr. Marks also reveals findings of cooperative attitude and behavior, well organized and progressive speech, normal thought process and content, normal orientation, normal perception, normal memory, normal fund of knowledge, concentration within normal limits, normal abstract thought, and normal insight and judgment. Tr. 297-98. Thus, while Plaintiff correctly cites mental status examination findings by Dr. Marks that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find the severity of the

marked limitations assessed by Dr. Marks were inconsistent with the overall

treatment record, which includes the largely "normal" results of Dr. Marks' own

mental status evaluation.  *See Tommasetti*, 533 F.3d at 1041 (ALJ may reject a

medical opinion if it is inconsistent with the provider's own treatment notes).

Second, Plaintiff argues that "[w]hile Dr. Marks' opinion does include a

diagnosis of homelessness, it does not appear that this factor was a significant basis

for the opinion."  ECF No. 14 at 14.  In support of this finding, Plaintiff cites Dr.

Marks' description of Plaintiff as a "profoundly depressed woman who is unable to

function due to her depression, anxiety, and adjustment to being abandoned by her

husband," which, according to Plaintiff, "suggest[s] that it was [Plaintiff's] mental

health symptoms which caused her homelessness."  ECF No. 14 at 14-15 (citing

Tr. 297).  However, Plaintiff failed to cite the next few sentences in Dr. Marks'

narrative, specifically, her notation that Plaintiff's husband "took everything and

has left her penniless and dependent on her mother for support.  She needs

counseling, legal assistance to complete a divorce, help with housing, vocational

planning, employment."  Tr. 297.  Based on the foregoing, the Court finds it was

reasonable for the ALJ to note that the Dr. Marks' opinion was based, at least in

part, on her consideration of factors other than Plaintiff's impairments, including

her explicit diagnosis of homelessness.  Moreover, any error is harmless because,

as discussed above, the ALJ's ultimate rejection of Dr. Marks' opinion was

supported by substantial evidence from the longitudinal treatment record.  *See Carmickle*, 533 F.3d at 1162-63.

As a final matter, the Court notes that Plaintiff fails to specifically challenge the ALJ's finding that Dr. Marks' opinion is inconsistent with the *overall* contemporaneous treatment record, including the lack of significant mental health treatment, which is a specific and legitimate reason, standing alone, to discount a medical opinion.  *See Orn*, 495 F.3d at 631 (the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion); *see also Carmickle*, 533 F.3d at 1161 n.2 (court may decline to address issues not raised with specificity in Plaintiff's opening brief).  Based on the foregoing, and regardless of evidence in the overall record that could be considered more favorable to Plaintiff, the Court finds it was reasonable for the ALJ to discount Dr. Marks' opinion, and Dr. Mitchell's reviewing opinion, as inconsistent with the contemporaneous treatment record, which includes Dr. Marks' own benign clinical findings.  *See Burch*, 400 F.3d at 679.

**C. Lay Witness**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to

1    [his] condition.").  To discount evidence from lay witnesses, an ALJ must give

2    reasons "germane" to each witness.  *Dodrill*, 12 F.3d at 919.

3        Here, Plaintiff's mother completed a third-party function report.  Tr. 232.

4    She reported that Plaintiff cannot sit or stand for very long, cannot lift "much," and

5    is very depressed.  Tr. 232-39.  The ALJ considered this lay witness statement, and

6    gave it "some weight" because Plaintiff's "treatment history also indicates that she

7    has minimal objective findings with regard to her low back pain (including no

8    neurological findings) and that she did not even seek mental health treatment until

9    2017.  Even then, [Plaintiff] only attended a few visits.  When she resumed mental

10   health treatment in 2018, she reported improvement."  Tr. 35.  Plaintiff argues this

11   finding was not supported by substantial evidence for the same reasons she

12   asserted in challenging the ALJ's rejection of Plaintiff symptom claims, including,

13   as discussed in detail above, (1) evidence of objective findings that could support

14   Plaintiff's claims, and (2) that Plaintiff's failure to seek mental health treatment

15   was "secondary to her profound depression."  ECF No. 14 at 15-16.

16       However, the ALJ may discount lay testimony if it conflicts with the

17   medical evidence.  *See Lewis*, 236 F.3d at 511.  Moreover, where the ALJ gives

18   clear and convincing reasons to reject a claimant's testimony, and where a lay

19   witness's testimony is similar to the claimant's subjective complaints, the reasons

20   given to reject the claimant's testimony are also germane reasons to reject the lay

21   witness testimony.  *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694

ORDER ~ 23

(9th Cir. 2009); *see also Molina*, 674 F.3d at 1114 ("[I]f the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those

reasons when rejecting similar testimony by a different witness"). As discussed

above, the ALJ gave clear and convincing reasons to reject Plaintiff symptom

claims, and those same well-supported reasons for rejecting Plaintiff's subjective

symptom claims are germane reasons to discount the lay witness evidence.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for

the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must

defer to an ALJ's assessment as long as it is supported by substantial evidence. 42

U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and

convincing reasons to discount Plaintiff's symptom claims, properly considered the

medical opinion evidence, and properly discounted the lay witness evidence. After

review the court finds the ALJ's decision is supported by substantial evidence and

free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 17, is

   **GRANTED**.

ORDER ~ 24

1    The District Court Executive is hereby directed to enter this Order and

2    provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE**

3    the file.

4        **DATED** June 15, 2021.

5

6

7

8

9    

10       Stanley A. Bastian
         Chief United States District Judge

11

12

13

14

15

16

17

18

19

20

21

ORDER ~ 25